NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNNA RINI, | Civil Action No. 2:16-cv-04973-SDW |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | June 19, 2017 |

**WIGENTON**, District Judge

      Before this Court is Plaintiff Johnna Rini's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("The Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Olarsch's findings dated November 30, 2015 are supported by substantial evidence. Therefore, the Commissioner's decision must be **AFFIRMED**.

## I. Procedural and Factual History

### A. Procedural History

Plaintiff filed for SSI on August 6, 2008 and DIB on July 24, 2008, alleging disability as of July 19, 2006. (R. 202-08.) Those applications were denied both initially and upon reconsideration. (R. 102-17.) Plaintiff requested a hearing, which was held on October 28, 2010 and April 14, 2011 before ALJ Olarsch. (R. 118, 133, 168.) Both Plaintiff and medical expert Dr. Gerald Galst ("ME") appeared and testified. (R. 21.) On April 25, 2011, ALJ Olarsch issued an unfavorable decision, finding that Plaintiff was not disabled and denying her applications for DIB and SSI. (R. 26.) On August 13, 2012, the Appeals Council denied Plaintiff's request for review. (R. 537.) Plaintiff filed a complaint in the United States District Court for the District of New Jersey, which remanded the case for further proceedings on March 24, 2014. (R. 542-61.) Plaintiff filed a subsequent complaint for SSI benefits on March 28, 2013. (R. 564.) On June 10, 2014, the Appeals Council determined that Plaintiff's claims were duplicative and ordered that the ALJ create a single record and issue a new decision on the consolidated claims. (*Id.*) Pursuant to the District Court remand order, the Appeals Council directed ALJ Olarsch to further develop the evidence and determine the impact of claimant's impairments on her residual functional capacity ("RFC"). (R. 459.) On November 12, 2015, the ALJ held a hearing where Plaintiff, the ME, and a vocational expert Tanya Edgehill ("VE") appeared and testified. (R. 459.) ALJ Olarsch issued a second unfavorable decision on November 30, 2015, finding that Plaintiff was not disabled because she had the RFC to perform medium work. (R. 463.) On June 21, 2016, the Appeals Council declined to assume jurisdiction, making the ALJ's decision final. (R. 448-50.) Plaintiff now requests that this Court reverse the ALJ's decision and grant Plaintiff an award of benefits. (Pl. Br. at 40.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was forty-four years old at the alleged onset date of July 19, 2006. (R. 358.) She has a high school education and worked previously as a customer service representative, a secretary, a waitress and a cashier. (R. 13, 221.) Her last significant employment was as a customer service representative with Gussco Manufacturing Co. from March 1999 until February 2003. (R. 214.) Plaintiff's Disability Report Form SSA-3368 provides that in this role, Plaintiff was required to answer phones, deliver folders, troubleshoot for customers, and assist the manager. (*Id.*) Plaintiff also stated that she competed computer work, retrieved stock, and lifted and carried boxes of folders each day. (R. 222.) Form SSA-3369 notes that Plaintiff had to walk for approximately two hours and was able to sit only four hours daily. (*Id.*) The weight she lifted most frequently was less than ten pounds, and the heaviest she lifted was approximately twenty pounds. (*Id.*)

#### 2. Medical History

The record shows that several healthcare professionals saw Plaintiff in relation to her disability claims. (*see* R. 213-1080.) Plaintiff also testified about her condition and completed several function reports. (R. 496, 785, 807.) On both the DIB and SSI applications, Plaintiff alleged that she suffers from congestive heart failure, chronic obstructive pulmonary disease ("COPD"), asthma, and a leaking heart valve. (R. 23, 214.) The following is a summary of the medical evidence:

Plaintiff was admitted to the emergency room at the Memorial Regional Hospital in Hollywood, Florida on several occasions between February and September of 2006. (R. 280-312.) On both February 4, 2006 and February 15, 2006, Plaintiff was taken by ambulance to the

hospital due to respiratory distress, where she was treated for asthma and released. (R. 281, 287.) She was also admitted to the same hospital and treated for respiratory issues on August 27, September 8, and September 9 of 2006. (R. 300, 311, 313.) Each time, the diagnosis was asthma exacerbation. (*Id.*) She was admitted to the Northshore Medical Center in Miami, Florida for obstructive chronic bronchitis on September 20, 2006, where she was diagnosed with and treated for exacerbation. (R. 313.)

On July 19, 2006, Plaintiff was admitted to Memorial Regional Hospital for intrauterine pregnancy and asthma. (R. 295.) The admitting sheet states that Plaintiff has had asthma since age eighteen and had been hospitalized four times previously for it. (*Id.*) Plaintiff was receiving a respiratory treatment and complained of shortness of breath. (R. 296.) Plaintiff was transferred to the ICU where she was intubated and the decision was made to perform a cesarean section. (*Id.*) She remained in the ICU until discharge on July 25, 2006. (*Id.*)

On February 25, 2009, Dr. Rambhai C. Patel ("Dr. Patel") performed a consultative examination at the request of the state agency. (R. 334.) Dr. Patel noted that Plaintiff suffers from cardiomyopathy, which was diagnosed in 2007. (R. 334.) He also noted that she has asthma and COPD, diagnosed two to three years earlier. (*Id.*) A chest X-ray was normal. (R. 336.)

A chest X-ray performed on January 20, 2009 was also normal. (R. 361.) An echocardiogram performed on the same day showed moderate global left ventricular dysfunction and COPD. (R. 363.) The report noted "the left ventricle is of normal size with moderate diffuse reduction of contractility and ejection fraction which is calculated to be 44%." (R. 373.) On September 18, 2010, a myocardial perfusion report from Dr. Carlos Alfonso ("Dr. Alfonso") showed normal imaging with a post-stress ejection fraction of sixty-four percent. (R. 371.) Dr.

Bart De Gregorio ("Dr. De Gregorio") also performed an echocardiogram on Plaintiff in September of 2010, and determined " . . . that [Plaintiff] is not disabled from a cardiovascular perspective. Though she has a borderline ejection fraction this is not felt to impair her function." (R. 380.) That test showed an ejection fraction of forty-five to fifty percent. (R. 375.)

The record indicates that Plaintiff began seeing internal medicine specialist Dr. Francis Molinari ("Dr. Molinari") in September of 2008 and saw him most recently in the summer of 2013. (R. 802.) Dr. Molinari's reports include diagnoses of COPD, asthma, and hypertension. (R. 837.) In a January 2009 report to the state agency, Dr. Molinari could not provide a medical opinion regarding Plaintiff's ability to do work-related activities. (R. 333.) In October of 2008, Dr. Molinari reported no evidence of any residual cardiomyopathy and that plaintiff was relatively stable. (R. 396.) On November 11, 2010, Dr. Molinari completed a report for the Division of Training and Employment which stated that plaintiff was unable to work, and limitations included lifting and climbing. (R. 447.) The length of disability was noted as "12 months or more." (*Id.*)

Plaintiff also saw cardiologist Dr. Neil Goyal ("Dr. Goyal"). (R. 802.) His records indicate treatment for hypertension, congestive heart failure, and palpitations and Plaintiff's complaints of chest discomfort, panic attacks, asthma and palpitations. (R. 838-839.) Dr. Goyal ordered a carotid ultrasound in April of 2012 that showed no significant stenosis in either the right or the left internal carotid artery. (R. 905.) An echocardiogram in May of 2012 showed a normal left ventricle with mild diffuse left ventricular dysfunction. (R. 906.)

More recently, on January 17, 2013, Plaintiff was admitted to Mountainside Hospital in Montclair, New Jersey with an admitting diagnosis of chronic airway obstruction and a principal diagnosis of pneumonia. (R. 852.) An echocardiogram showed a left ventricular ejection

5

fraction of forty-five to fifty percent and abnormal mid anterior septum, mid septum, and basal septum segments. (R. 865.) A chest X-ray reported borderline heart size and grossly clear lungs. (R. 866.)

A medical evaluation from Dr. Janice Pieretti ("Dr. Pieretti") of the Barnabas Health Heart Center in Newark, New Jersey in May of 2015 shows that Plaintiff self-referred for management of cardiomyopathy after Dr. Goyal stopped accepting her insurance. (R. 1034.) Dr. Pieretti opined that while Plaintiff may classify herself as a NYHA class three, she did not believe her symptoms were attributable to underlying cardiac function. (R. 1036.) Instead, Dr. Pieretti believed Plaintiff's symptoms were caused by Plaintiff's likely COPD. (*Id.*) A CT coronary angiography and a coronary CT chest exam performed in 2015 also appear normal. (R. 1077-1079.)

### 3. Mental Health History

On August 6, 2013, psychologist Dr. Paul F. Fulford ("Dr. Fulford") performed an examination of the Plaintiff at the request of the state agency. (R. 907.) Plaintiff's chief complaints were poor memory, "fear of everything," and shortness of breath. (R. 908.) Plaintiff's hygiene and grooming were good, her attitude was cooperative, and her level of intelligence appeared to be within normal limits. (R. 908-909.) Dr. Fulford's diagnostic impression included, "adjustment disorder with mixed emotional features secondary to medical condition," along with asthma, cardiomyopathy, COPD, joblessness, and chronic illness. (R. 909.)

Jewish Family Services ("JFS") records from October 2014 through August 2015 indicate Plaintiff was treated for stress, anxiety, and depression. (R. 1013-15, 1089-1101.) A November 2014 letter addressed to Plaintiff's attorney from JFS describes Plaintiff's ailments as

6

including asthma, heart failure, and hypertension. (R. 1010.) The letter also states that Plaintiff described being in an anxious state since the birth of her son and that, as a result, she had feelings of helplessness, hopelessness, depression, terror, and fatigue. (*Id.*) Plaintiff reported having two or three panic attacks per week, difficulty falling asleep, frequent crying, and short-term memory issues. (*Id.*)

### 4. Function Reports

Plaintiff completed function reports on August 18, 2008; May 26, 2009; April 13, 2013; and October 23, 2013. (R. 229-36, 248-55, 785-92, 807-14.) Plaintiff's sister completed one on April 21, 2013. (R. 793-800.) In her earliest report, Plaintiff stated that she cares for her two-year-old son, performs light cleaning, prepares meals, and watches television. (R. 229.) She reported that she cannot go out alone because she is afraid of feeling unwell while out with her son. (R. 232.) She stated that her condition affects lifting, walking, climbing stairs, and squatting and that she can only walk one block. (R. 234.) Her most recent report in 2013 reiterates that she can no longer walk more than a block without resting and that she must sleep in a sitting position. (R. 808.) Plaintiff reported that she has someone help with laundry, taking out the garbage, and shopping and that she has difficulty with lifting, walking, understanding, sitting, memory, following instructions, and concentration. (R. 811.) She also states that she has a fear of dying and leaving her son. (*Id.*)

### 5. Hearing Testimony

At a November 12, 2015 hearing, Plaintiff testified that she was let go from her 2003 customer service position after her employer asked her to return from sick leave sooner than she could. (R. 483-84.) She reported that the dust in the warehouse exacerbated breathing problems and illness, and that, at that time, she was experiencing back pain resulting from an earlier car

7

accident. (R. 486.) ALJ Olarsch asked Plaintiff what symptoms were currently preventing her from working, to which plaintiff replied, "I have horrible panic attacks; what the [sic] call a panic disorder. I have fear of dying and leaving my child. They [sic] anxiety is horrible; the fatigue, the depression . . . " (R. 494-95.) Plaintiff also testified that she experiences heart palpitations and back pain, cannot sit at a computer, and cannot walk more than half a block before she has difficulty breathing. (R. 496, 498, 505.)

At the November 12, 2015 hearing, the ME testified that the cardiology notes did not support a finding of disability and that Plaintiff's rapid heartbeat could be due, at least in part, to prescribed medication. (R. 510-11.) The ME identified no clear-cut musculoskeletal or cardiovascular limitations. (R. 514.) He opined that many of Plaintiff's symptoms were psychiatrically related and that there were scant objective findings. (R. 508-09.) He responded affirmatively when asked whether the effects of cardiophobia could cause a limitation so severe that it was as if the patient had the cardiac problem. (R. 513.)

ALJ Olarsch presented the VE with several hypotheticals to gauge Plaintiff's work capabilities. (R. 516-21.) He asked if there were jobs in the national economy for an individual who was capable of the full range of light or medium work, limited to unskilled work, with the individual being off task up to ten percent of the time and in which exposure to fumes, odors, and dusts must be avoided. (R. 516-17.) The VE responded affirmatively and gave several examples of viable jobs, including box maker (medium), bagger (medium), ticket printer (light), and tagger (light). (R. 516-17.)

## II. Legal standard

### A. Standard of Review

This Court has plenary review of all legal issues on appeal of a decision by the Commissioner of Social Security. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). It is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa Apr. 15, 2009) (quoting *Consolo v. Fed Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v/ Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This court is required to give substantial weight and deference to ALJ's findings if supported by substantial evidence. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargengrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand it appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have "been established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a); *see also Cruz*, 244 F. App'x at 480. If the ALF determines at any step

that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "involves doing significant and productive physical or mental duties…for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 494.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 41.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(v)(4).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. Discussion

The Act defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will be found disabled "only if [her] physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). "'Work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

On November 30, 2015, after performing the five-step disability test, ALJ Olarsch found that Plaintiff was not disabled within the meaning of The Act from July 19, 2006 through the date of the decision. (R. 460.) ALJ Olarsch properly found that Plaintiff met the insured status requirements of The Act through June 30, 2008. (R. 461.) At step one of the disability analysis, ALJ Olarsch found that Plaintiff had not engaged in substantial gainful activity since July 19, 2006, the alleged onset date. (R. 461.)

At step two, where it must be determined whether Plaintiff has any "severe" medically determinable impairments, ALJ Olarsch found that the Plaintiff had the following severe impairments: "cardiomyopathy, obstructive pulmonary disease, asthma and affective disorders." 20 C.F.R. § 416.920(c); (R. 461.)

At step three, ALJ Olarsch properly determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 462.) Specifically, it was determined that Plaintiff's asthma did not rise to the level of meeting the chronic obstructive pulmonary disease criteria of 3.02A and did not meet the frequency and severity of attacks with the requisite physician intervention or hospitalization during a twelve-month period. (R. 462.) Additionally, ALJ Olarsch found that the Plaintiff did not reach the appropriate FEV1 or FVC values indicated in Medical Listing 3.02. (*Id.*)

ALJ Olarsch also found that the Paragraph B requirements were not satisfied and that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listing 12.04. (*Id.*) Paragraph B criteria are used to evaluate mental impairment at steps 2 and 3 and are not a residual functional capacity test. (*Id.*) To satisfy paragraph B, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*) Plaintiff did not satisfy any elements. (*Id.*) ALJ Olarsch also considered Paragraph C criteria but found none established in the evidence. (*Id.*)

ALJ Olarsch properly found that the Plaintiff had "the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except that Plaintiff must avoid exposure to fumes, odors, dusts, gases or dangerous machinery, must avoid unprotected heights, and is limited to unskilled work that allows for being off-task up to 10% of the work day." (*Id.* at 463.) This finding requires a consideration of all symptoms and whether they can be reasonably accepted as consistent with the objective medical evidence. (R. 463.) In considering the symptoms, the ALJ must determine whether there is an underlying medically determinable physical impairment. (R. 463.) If one is established, the ALJ must evaluate the intensity,

persistence, and limiting effects of claimant's symptoms to determine how they limit functioning. (*Id.*) If claimant's statements are not consistent with the medical record, the ALJ must determine the credibility of the claimant. (*Id.*)

ALJ Olarsch placed great weight on the ME testimony in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely credible. (*Id.* at 464.) The ME testified that Plaintiff's cardiological tests were essentially normal and that despite Plaintiff's complaints of back pain, there was no evidence to support those claims. (*Id.*) The ME also pointed to the absence of objective findings for many years leading up to the hearing. (*Id.*) ALJ Olarsch noted that there were no rheumatologist reports to support Plaintiff's diagnosis of fibromyalgia and that recent tests, including echocardiograms, angiograms and x-rays show normal results or minor variations. (R. 464-65.) The ALJ relied on the ME testimony which stated that two different cardiologists believed Plaintiff's complaints were unrelated to any objective findings. (R. 465.)

ALJ Olarsch properly found that "the objective diagnostic evidence, the treatment record and the consultative examination evidence support [the ME's] opinion." (*Id.*) The ALJ also relied on the ME's testimony that the Plaintiff had no obvious musculoskeletal or cardiovascular limitations. (R. 514.) ALJ Olarsch noted that the Plaintiff's grade III.VI cardiac disease functional classification was based on subjective complaints with no objective medical support. (*Id.*)

ALJ Olarsch also looked to Dr. Molinari's reports concerning Plaintiff's cardiac problems and found that they were both inconsistent and supported neither by the report's findings nor by Dr. Molinari's own treatment records. (*Id.*) ALJ Olarsch found that there was "no cardiological, musculoskeletal, clinical or other objective medical evidence to support that

15

the claimant can stand or walk for less than two hours per day, that she is limited in pushing and pulling, and that she is limited in lifting and carrying up to 10 pounds." (*Id.*)

Relying on the ME's testimony, ALJ Olarsch properly found that the state agency physical RFC assessment improperly indicated an RFC for light work. (R. 465-66.) The ALJ afforded great weight to a February 2009 medical examination, which indicated chest pain absent any associated symptoms, made no note of Plaintiff's reportedly frequent asthma attacks, and revealed essentially normal musculoskeletal, cardiac, and neurological findings. (R. at 466.) ALJ Olarsch further relied on Dr. Galst's testimony that many of Plaintiff's symptoms were psychiatrically related and that she had the residual functional capacity to perform "medium" work. (*Id.*)

In response to Plaintiff's mental health status, ALJ Olarsch relied on reports from therapists. (R. 467.) The therapists reported panic attacks and associated symptoms, which limited Plaintiff's ability to function. (R. 1010.) However, ALJ Olarsch found that those purported limitations were supported neither by the treatment record nor the consultative examination evidence. (*Id.*) He pointed to one August 2013 test, which indicated that the Plaintiff denied any mental health treatment and was fully oriented and well-groomed, with normal gait and posture. (*Id.*) The test also indicated that she was cooperative, had an appropriate amount of knowledge, exhibited good mental control and communication ability, and that her motivation and effort levels appeared satisfactory. (*Id.*)

At step four, ALJ Olarsch properly found that the claimant did not have the RFC to perform her past relevant work. (R. 467.) The ALJ relied on testimony from the VE, who opined that Plaintiff was unable to perform past relevant work as a customer service representative (DOT 249.362-026) because that work is at least semiskilled and requires greater

16

concentration than is required by "simple" work. (*Id.*) ALJ Olarsch also found that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled," whether or not the claimant has transferable job skills." (R. 467-68.)

At step five, ALJ Olarsch properly found that a significant number of jobs exist in the national economy that Plaintiff can perform. (*Id.*) He considered plaintiff's age, education, work experience, and residual functional capacity in conjunction with the Medical-Vocational Guidelines listed in 20 C.F.R. Part 404, Subpart P, Appendix 2. (R. 468.) If Plaintiff were able to perform the full range of medium work, Medical-Vocational Rules 203.26 and 203.19 would direct a finding of "non-disabled." (*Id.*) However, the ALJ found that Plaintiff's ability to perform all of the requirements of medium work was hindered by limitations. (*Id.*) ALJ Olarsch presented the VE with various hypotheticals relating to Plaintiff's limitations and heavily relied on the VE's testimony in making a finding of "not disabled." (*Id.*) The VE identified several jobs with a medium residual functional capacity which Plaintiff could perform, including a bagger (DOT 920.687-014) and a packager (DOT 920.587.018). (*Id.*) The VE further testified that even if claimant had a light residual functional capacity, jobs would be available which plaintiff could perform. (*Id.*) ALJ Olarsch found that this testimony was consistent with the Dictionary of Occupational Titles and properly determined that Plaintiff was not disabled, as defined in The Act, from July 19, 2006, through the date of the decision. (R. 468-69.)

On appeal, Plaintiff seeks reversal of the Commissioner's decision on two bases. First, Plaintiff argues that the Commissioner did not properly evaluate the medical evidence. (Pl.'s Br. at 24-32.) Second, Plaintiff contends that the ALJ erred in determining Plaintiff's residual

17

functional capacity and misinterpreted VE's responses to the hypothetical questions. (*Id.* at 32-36.)

As discussed, ALJ Olarsch determined that Plaintiff's testimony was not entirely credible and that the absence of objective medical findings supported a determination that Plaintiff had the RFC to perform medium work except that Plaintiff must avoid exposure to fumes, odors, dusts, gases or dangerous machinery, must avoid unprotected heights, and was limited to unskilled work that allows for being off-task up to ten percent of the work day. (R. 463.) According to Plaintiff, her complaints were not given proper credence and she is far more restricted than the ALJ's findings would indicate. (Pl.'s Br. at 24.) Plaintiff points particularly to a prior hearing in which the ME testified that he did not think she could do medium work, though the ME did not think it was entirely clear. (*Id.* at 26.) Plaintiff relies on a finding from state agency doctors, which indicated that Plaintiff could perform light work. (*Id.*) It is Plaintiff's position that her cardiophobia is so debilitating that it renders her severely limited. (*Id.* at 28.)

However, ALJ Olarsch's findings are supported by substantial credible evidence. Many of Plaintiff's complaints are subjective and not supported by the medical record. In formulating the residual functional capacity, the Commissioner's decision explicitly relies on treatment records, tests, and credible expert testimony as they pertain to each of Plaintiff's alleged ailments, including COPD, back pain, and anxiety. The ME opined that plaintiff had no cardiovascular or musculoskeletal impairments. (R. 514.) The ALJ cited medical records from at least two doctors which indicated that Plaintiff's cardiovascular function was normal or near normal. (R. 466.) He noted that one of Plaintiff's medical reports, which limits her to

18

essentially a sedentary RFC, is inconsistent and contradicted by the same treating physician in a later report. (R. 25.)

In light of these considerations, the ALJ's findings regarding Plaintiff's RFC are supported by substantial credible evidence. Many of Plaintiff's complaints are subjective and not supported by the medical record, and Plaintiff's argument based on the ME's testimony in an earlier hearing is not supported by the most recent hearing. At that time, the ME testified that Plaintiff had the RFC to perform at least "medium" work. (R. 466.) Further, the most recent hearing included additional, credible testimony from a vocational expert – as recommended by the Appeals Committee – of the Plaintiff's abilities and opportunities. (R. 459, 516-22.) Lastly, the ALJ found that the state agency's determinations of an RFC for light work were credibly contradicted. (R. 466.)

The hypotheticals presented to the VE and the VE's subsequent testimony are sufficient to support ALJ Olarsch's findings. Because Plaintiff's ability to perform medium work was impeded by limitations, it was necessary and appropriate for the ALJ to ask the VE whether jobs existed which Plaintiff could do.

## IV. Conclusion

Because this Court finds that the ALJ Olarsch's factual findings were supported by substantial credible evidence in the record and that ALJ Olarsch's legal conclusions were correct, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties